**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:06CV-P188-H**

**FREDERICK D. JONES** **PLAINTIFF**

**v.**

**BECKY PANCAKE *et al*.** **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 (DN 1). The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). After reviewing the complaint and its attachments,[1] the Court will dismiss the action for the reasons set forth below.

**I. SUMMARY OF COMPLAINT**

Plaintiff, an inmate at the Eastern Kentucky Correctional Complex ("EKCC"), commenced this action against Warden Becky Pancake of the Western Kentucky Correctional Complex ("WKCC"); Paul Brindley, WKCC Captain; Dr. Steve Hiland of WKCC; Warden John Motley of the EKCC; John Rees, Commissioner of the Kentucky Department of Corrections, and a David Vance.[2] Plaintiff has sued each Defendant in both his/her individual and official capacities and

---

[1]Plaintiff also filed several purported "supplements" to his complaint (DNs 6, 7, 11, 13). Pursuant to Sixth Circuit case law, however, "'courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal.'" *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997)). Because the instant complaint is being dismissed *sua sponte* under 28 U.S.C. § 1915A, the Court cannot consider the supplements.

[2]Plaintiff listed David Vance in the caption of his complaint, but he did not include him in the "parties" section in the body of the complaint. As such, the Court does not have any additional information about Mr. Vance.

seeks both compensatory and punitive damages.

Plaintiff states that on or about December 15, 2005, he was transferred to WKCC. At the time of his arrival, Plaintiff alleges that he had a "bottom bed only profile" due to knee problems. Plaintiff states that upon arrival to WKCC, he explained his condition to Officer Jamie Stovall, but was told that he would have to sleep on the top bunk until he could see the doctor at WKCC. When Plaintiff insisted that he could not sleep on the top bunk because of his medical condition, Officer Stovall escorted Plaintiff to Captain Brindley's office. Plaintiff explained to Captain Brindley that his medical condition required him to sleep only on the bottom bunk. According to Plaintiff, Captain Brindley told Plaintiff that he would have to sleep on the top bunk regardless of his prior medical orders. The following day, Plaintiff "went to see the doctor about my bottom bed profile [and was told] that everybody got a bad knee, no bottom bunk for you."

Plaintiff then wrote Warden Becky Pancake about his problems. Plaintiff's letter was forwarded to Dr. Hiland. The situation was apparently not resolved to Plaintiff's satisfaction, because he filed a formal written grievance in the first part of January 2006, concerning his need for a bottom bunk. Approximately two weeks later, Plaintiff fell and injured his back while getting down from the top bunk. Thereafter, Plaintiff was assigned to a bottom bunk. Plaintiff concedes that he did not formally pursue his grievance related to this incident. After his fall, Plaintiff filed another grievance in mid-January 2006, "because Dr. Hiland had my knee x-rayed, but did nothing for my back." It also does not appear that Plaintiff formally pursued any appeals related to this grievance.

Plaintiff also alleges that on December 23, 2005, his medication "for pain in my knee was stopped because I didn't take it three times a day." There is no allegation that Plaintiff formally grieved this claim to prison officials.

On March 3, 2006, Plaintiff alleges that "Jamie Stovall had me placed in segregation with the help of Captain Brindley when their S.O.P.s says that I should not have placed in segregation." Plaintiff claims this was "a form of retaliation because of the civil suit that I had filed against both of them, plus they had to conspire with each other in order to do this." Plaintiff wrote Warden Pancake about his concerns that his placement in segregation was a form of retaliation for the state court actions Plaintiff had filed against Officer Stovall and Captain Brindley.

On March 13, 2006, Plaintiff alleges that Warden Pancake "had me transferred one day before my scheduled hearing, when I had only been at Western for 59 days, had not put in for a transfer or been approved for one." Plaintiff claims that this was another form of retaliation.

Plaintiff further alleges that sometime between being placed in segregation on March 3, 2006, and his transfer to EKCC on March 13, 2006, some of his personal property was destroyed, including several legal papers. Again, Plaintiff believes that this action was the product of retaliation for his state civil actions. On March 29, 2006, Plaintiff filed a claim form with the state seeking return of his property and/or monetary compensation in the amount of $1500 for his lost property.

Finally, Plaintiff alleges that after his transfer to EKCC, he was left in segregation five days over the twenty-day maximum, which he claims amounts to cruel and unusual punishment. On March 19, 2006, Plaintiff filed a grievance related to this issue. On March 20, 2006, Plaintiff received a notification advising him that several of his grievances, including the March 19th grievance, were deficient and instructing him that he could resubmit the grievances once the deficiency was corrected. It does not appear that Plaintiff attempted to resubmit his grievances.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

## III. ANALYSIS

### A. Failure to Exhaust

Under 42 U.S.C. § 1997e(a),[3] a prisoner is required to exhaust all available administrative remedies prior to instituting an action under § 1983 or any other federal law. *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002); *Brown v. Toombs* 139 F.3d 1102 (6th Cir. 1998). The purpose of the grievance procedures is to give prison officials fair notice of the allegations and an opportunity to act on them prior to the inmate filing suit. *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). There is no exception to the exhaustion requirement even where the internal grievance procedure cannot provide an inmate-plaintiff with the purely monetary relief requested in his federal action. *Booth v. Churner*, 532 U.S. 731, 735 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). An inmate bears the burden of alleging and showing that he has exhausted his remedies. *Brown,* 139 F.3d at 1104. And, district courts are required to dismiss a complaint without prejudice where a prisoner fails to exhaust those remedies. *Id.* at 1102.

To establish exhaustion, a prisoner must allege and show that all available remedies have been exhausted and attach documentation demonstrating the administrative disposition of his claims. *Brown*, 139 F.3d at 1104. Should the prisoner not have the documentation to demonstrate exhaustion, he must describe with specificity the administrative proceeding and its outcome. *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Where the complaint fails to contain "particularized averments concerning exhaustion showing the nature of the administrative proceeding

---

[3]Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title [*i.e.*, 42], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

and its outcome, the action must be dismissed under § 1997e." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004) (citation omitted).

A prisoner may not raise his claims in informal complaints as he must follow the formal grievance process to properly exhaust all administrative remedies. *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). Moreover, a prisoner may not simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or it is futile for him to do so because his grievance is now time-barred under the regulation. *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997).

The Kentucky Department of Corrections has a multi-step grievance mechanism in place to process inmate grievances. The grievance process governing healthcare concerns is set forth in Policy Number 14.6 II(K) of the Corrections Policies and Procedures ("CPP"). After the inmate properly completes a grievance form, he must first attempt to resolve the grievance through the informal resolution process with the institutional chief medical authority. If the matter cannot be resolved at the informal level, the inmate may make a formal request for a review by the healthcare grievance committee, which makes a recommendation. If the inmate disagrees with the recommendation, he may appeal the decision to the department of corrections medical director's office which forwards the appeal to the appropriate administrator.

For non-medical grievances, the process is similar. After the inmate files the initial grievance, an attempt must be made to informally resolve it. If the matter cannot be resolved, the grievance committee conducts a hearing, if requested, and then makes a recommendation. If the grievant is dissatisfied with the recommendation he may appeal to the warden within three working days of notification of the committee's recommendation. The warden has fifteen working days to respond to the grievance. A grievant who is not satisfied with the warden's decision may appeal that decision to

the commissioner within three working days after notification of the warden's decision. If the warden's decision is appealed to the commissioner, the grievant shall complete a grievance appeal that shall be sent along with the grievance to the commissioner's office through the grievance coordinator. The grievance appeal shall explain why the warden's decision did not resolve the grievance. *See* CPP 14.6(J).

If the grievant is transferred to another institution at any point during the grievance procedure, the grievant may appoint another inmate to act in his palce with full power to appeal or not, as the appointed inmate may decide. "If the grievant decides not to appoint another inmate for him, then any steps remaining at the institution will be discontinued and the grievance dismissed at the time of transfer." However, "if prior to an inmate's transfer, his grievance has already been appealed to the commissioner, then his grivance shall not be discontinued by reason of his transfer." CPP 14.6(L).

The Court will now examine each of Plaintiff's claims to determine whether he properly exhausted them prior to initiating suit.

**1. Bottom-bunk profile, pain medication, and medical treatment after Plaintiff's fall**

From the records submitted by Plaintiff, it appears as if he completed step one of the grievance process by filing inmate grievances related to these claims. However, Plaintiff admits in his complaint that he did not complete the grievance procedure for these claims. Instead, Plaintiff indicates that he wrote the warden and commissioner letters concerning his complaints.

In *Woodford v. Ngo*, __ U.S. __, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), the Supreme Court concluded that the PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. Here, although it appears that Plaintiff

placed the warden and commissioner on notice of his complaints, he admits that he did not complete the formal appeals process as related to these claims prior to filing suit. Thus, under *Woodford* these claims must be dismissed for failure to properly exhaust them prior to filing suit.

**2. Plaintiff's March 3, 2006, placement in segregation and March 13, 2006, transfer**

Plaintiff claims that he was unconstitutionally placed in segregation by Officer Stovall and Captain Brindley and unconstitutionally transferred to EKCC in retaliation for his filing a state lawsuit against various prison officials at WKCC. As a conflict with staff members, these are grievable claims.[4] However, once again, while it appears that Plaintiff wrote letters concerning these incidents, after the fact, it does not appear that Plaintiff properly followed the formal multi-step grievance process. As such, these claims must also be dismissed.

**3. Loss of Plaintiff's property between March 3, 2006, and March 13, 2006**

On March 29, 2006, Plaintiff filed a claim related to his lost property with the Board of Claims pursuant to KRS 44.070. It does not appear that the Board of Claims had acted on Plaintiff's claim when he commenced this suit just a few days later on April 5, 2006. The fact that Plaintiff initiated his administrative remedies prior to filing this action is of no consequence. The Sixth Circuit has clearly held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.* As such, this claim must be dismissed as well.

**4. Five days extra days in segregation at EKCC**

[4]Under the grievance procedure, an inmate that believes he has been penalized for filing a grievance may write to the grievance coordinator, warden or corrections ombudsman. *See* CPP 14.6(M). Here, however, Plaintiff claims that he was retaliated against by specific staff members for filing a lawsuit, not a grievance. As such, the Court believes that this is properly considered either "personal actions by staff" or "staff conflicts," both grievable issues. CPP 14.6(B).

Again, it appears that while Plaintiff initiated the grievance mechanism in relation to this claim by filing a grievance, he did not complete the process. The grievance coordinator returned this grievance because of a deficiency (Plaintiff filled out the form incorrectly). The deficiency notice indicated that Plaintiff could re-file the grievance once he correctly completed the form. However, it does not appear that Plaintiff re-filed his grievance and completed the entire grievance process prior to filing suit. As such, this claim must be dismissed as well.

**B. Substantive Grounds for Dismissal**

Despite Plaintiff's failure to exhaust available administrative remedies, this Court may nevertheless dismiss the underlying claim with prejudice "without first requiring the exhaustion of administrative remedies" if the "claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2). As explained below, several of Plaintiff's claims fail to state a claim, and therefore, are also subject to dismissal on the merits with prejudice.

**1. 42 U.S.C. § 1983 Official Capacity Money Damages Claims**

Plaintiff sues Defendants in both their official and individual capacities. Pleading official capacity is another way of pleading suit against the entity of which a defendant is an agent, official, or employee. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because these Defendants are employees of the State, Plaintiff's official capacity claims are actually claims against the Commonwealth of Kentucky.

States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, under the Eleventh Amendment to the United States Constitution, this Court is deprived of jurisdiction over claims asserted directly against the Commonwealth. *Edelman v. Jordan*,

415 U.S. 651, 678 (1974). Accordingly, the Court must dismiss Plaintiff's 42 U.S.C. § 1983 official capacity money damages claims against these Defendants with prejudice.

**2. Deprivation of Property Claims**

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *rev'd on other grounds by*, *Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt*, 451 U.S. 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation. *Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring).

As explained by Justice O'Connor,

> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the inmate the remedies it promised would be available. Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred. Thus, in

> challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate. When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Hudson*, 468 U.S. at 539 (citations omitted).[5] Because Plaintiff has failed to allege that state laws are inadequate, his property deprivation claims fail to state a claim upon which relief can be granted.

**3. March 13, 2006, transfer to EKCC**

A retaliation claim essentially entails three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Even assuming that Plaintiff could prove that he engaged in protected activity, his transfer to EKCC does not amount to an adverse action. A lateral transfer from one prison facility to another does not suffice to sustain a retaliation claim, even though this transfer might have "some effect on [the plaintiff's] future filing of grievances," and even though this transfer might be intended in part "to give prison staff a respite from [the prisoner's] continuous barrage of grievances." *Ward v. Dyke*,

---

[5] Justice O'Connor further explained as follows:

> When a person is arrested and incarcerated, his personal effects are routinely "searched," "seized," and placed in official custody. Such searches and seizures are necessary both to protect the detainee's effects and to maintain the security of the detention facility. The effects seized are generally inventoried, noticed by receipt, and stored for return to the person at the time of his release. The loss, theft, or destruction of property so seized has not, to my knowledge, ever been thought to state a Fourth Amendment claim. Rather, improper inventories, defective receipts, and missing property have long been redressable in tort by actions for detinue, trespass to chattel, and conversion. Whether those remedies are adequate and made available as promised have always been questions for the Takings and Due Process Clauses. The Fourth Amendment has never had a role to play.

*Hudson*, 468 U.S. at 540 (citations omitted).

58 F.3d 271, 274-75 (6th Cir. 1995). Plaintiff has not alleged that the transfer subjected him to any true change in conditions. The only change was the location of Plaintiff's incarceration, which standing alone is not an adverse action as a matter of law. Accordingly, this claim will be dismissed with prejudice.

**4. Five extra days in segregation**

Plaintiff alleges that the fact that he spent five days over the maximum penalty of twenty days in segregation amounts to cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim." *Murray v. Unknown Evert*, 84 Fed. Appx. 553, 556 (6th Cir. 2003) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). As such, this claim will be dismissed as a matter of law for failure to state a cause of action.

## IV. CONCLUSION

In conclusion, on initial review the Court will dismiss Plaintiff's 42 U.S.C. § 1983 official capacity money damages claims, deprivation of property claims, retaliation claims related to his transfer to EKCC, and his cruel and unusual punishment claims related to his March 2006 stay in segregation against Defendants with prejudice. The Court will dismiss the remainder of Plaintiff's

claims without prejudice for failure to exhaust.

The Court will enter an order consistent with this memorandum opinion.

Date: December 14, 2006

John G. Heyburn II
Chief Judge, U.S. District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

4412.008